ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUL 12 PM 4:06
CLERK
SO. DIST. OF GA.

| | |
|---|---|
| KENNY RAY CRAIG, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 313-024 |
| ) | |
| JASON MEDLIN, Warden of Wheeler ) | |
| CF; CORRECTIONAL CORPORATION ) | |
| OF AMERICA; and, BRIAN OWENS, ) | |
| Commissioner GDC, ) | |
| ) | |
| Defendants. ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Riverbend Correctional Facility in Milledgeville, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events alleged to have occurred at Wheeler Correctional Facility in Alamo, Georgia. (See doc. no. 1.) Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants.[1] Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.   **SCREENING OF THE COMPLAINT**

   A.   **BACKGROUND**

   Plaintiff names the following Defendants in his complaint: (1) Jason Medlin, the

---

[1] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

Warden of Wheeler Correctional Facility ("WCF"); (2) the Corrections Corporation of America ("CCA"), a private corporation that has contracted to house state prisoners at WCF; and, (3) Brian Owens, the Commissioner of the Georgia Department of Corrections. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Upon his transfer to WCF on April 15, 2011, Plaintiff "came to be housed in Unit 200, Dorm R which . . . had a very high incident of gang activity and violence." (Id. at 7.) "[A]lmost immediately," his personal property was stolen, and he notified correctional officers verbally and in writing. (Id.) On an unspecified date, Correctional Officer Villegas III began "openly" searching locker boxes "making it known" that he was searching for Plaintiff's property, which "brought hostility from other inmates," such that Plaintiff asked "that the search be called off for fear of reprisal by gangs." (Id. at 7-8.)

On September 26, 2011, Plaintiff asked Unit Manager Wright to relocate him to another unit based on the "extreme hostility and animosity in the dorm that was directed at him," and Unit Manager Wright "agreed the situation was unsafe and that [ ] Plaintiff should be moved." (Id. at 8.) On October 6, 2011, during dorm inspection, Plaintiff told Unit Manager Wright and Defendant Medlin that he was in fear of an "emminant (sic) attack on his person and that he was in fear of his life," and Defendant Medlin "said he would move [ ] Plaintiff when he had time." (Id.) Plaintiff "pressed" Unit Manager Wright about protective custody ("PC"), and he was told, "The Warden said he does not recognize PC." (Id.) After being told this, Plaintiff "refused to go back to his bunk," and Unit Manager Wright "threatened him with disciplinary action." (Id. at 9.)

Plaintiff asserts that Defendant CCA "has policies and procedures that do not allow for

2

inmate-initiated protective custody," which "inhibited [ ] Plaintiff from seeking protection when he knew and reported to Defendant Medlin that his life was in danger." (Id. at 11.) Plaintiff also asserts that Defendant Owens, "via periodic audits and oversight, is aware of Defendant CCA's policy to not allow inmate initiated protective custody." (Id. at 12.)

On October 9, 2011, at approximately 11:00 a.m., four "gang affiliated inmates" attacked Plaintiff with "locks in socks." (Id.) Other inmates intervened because "no officers saw the attack, even though it was in the open." (Id.) As a result of the assault, Plaintiff sustained lacerations, a concussion, crushed facial bones, and other injuries, he had three surgeries and "months of painful recovery," and he "still suffers from permanent [and] degenerative physical and psychological effects such as loss of some vision, degeneration of sight, ringing ears, sleep deprivation, scars, parinoia (sic) [and] PTSD along with other injuries." (Id. at 9-10.)

"[O]nly 2 female officers were assigned to supervise some 360 inmates" at the time of Plaintiff's assault. (Id.) Plaintiff asserts that Defendant CCA "has policies [and] procedures that allow for only two (2) female guards who are unarmed, to be in supervision over 360 men at a time . . . even when there is a high incidence of gang violence in the dorms." (Id. at 11.) Plaintiff also asserts that Defendant Owens "via periodic audits and oversight, is directly aware of Defendant CCA's policies [and] procedures" concerning the number of guards and protective custody, and that Defendant Owens "through his actions and omissions concerning these policies and knowledge of violent gang activity is directly responsible for the violation of [ ] Plaintiff's rights and therefore his injuries." (Id. at 12.)

After the assault, Plaintiff alleges that unspecified CCA employees "began the coverup," as they "actively interfered with the grievance procedures . . . and generally interfered

3

with [ ] Plaintiff's ability to document what happened." (Id. at 10.) Plaintiff further alleges that CCA "required informal grievances" as an "active method of hiding grievances from the DOC Auditors." (Id. at 11.)

Defendant Medlin purportedly violated Plaintiff's rights because he was "directly told" of the threat of gang violence against Plaintiff and "refused to relocate [ ] Plaintiff or to place him in Protective Custody," while Defendant CCA allegedly violated his rights because its "actions and omissions vis-a-vis policy [and] procedure failed to protect [ ] Plaintiff from known, personal, emminant (sic) danger from gang violence." (Id. at 5.) Plaintiff asserts that Defendant Owens violated his rights "vis-a-vis policy [and] procedure contribut[ing] to the failure to protect Plaintiff." (Id.) Plaintiff seeks compensatory and punitive damages, and "[a]ny other such relief the Court deems just and proper in the interests of Justice." (Id. at 6.)

### B.    DISCUSSION

#### 1.    Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, of if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Failure to State a § 1983 Claim against Defendant CCA Concerning Grievance Procedure

There are at least two reasons why Plaintiff's complaint fails to state a claim against Defendant CCA based on his allegation that Defendant CCA "required informal grievances"

as an "active method of hiding grievances from the DOC Auditors."[2] (Doc. no. 1, p. 11.)

First, because "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure," Plaintiff's informal grievance allegations fail to state a § 1983 claim upon which relief may be granted.[3] Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (*per curiam*); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (*per curiam*) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983). While not a § 1983 claim in of itself, however, the Court will consider Plaintiff's grievance allegations when determining whether Plaintiff satisfied the exhaustion requirement of 42 U.S.C. § 1997e(a) in connection with the claim against Defendant Medlin that survived this initial screening.

Second, the allegation regarding nefarious intent underlying the informal grievance

---

[2]Private contractors that run prisons, like CCA, do act under color of state law for purposes of § 1983 liability. See Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003); Blumel v. Mylander, 919 F. Supp. 423, 426-27 (M.D. Fla. 1996).

[3]Plaintiff also vaguely alleges that unspecified "CCA employees" interfered with his attempt to utilize grievance procedures. (See doc. no. 1, p. 10.) Setting aside the obvious problem that Plaintiff does not specify which employees to whom he is referring, such allegations would fail to state a claim in any event based on the principles noted above. See Bingham, 654 F.3d at 1177.

requirement is entirely speculative and conclusory, and warrants no further consideration. See Iqbal, 556 U.S. at 678 (complaint is insufficient where it "tenders naked assertions devoid of further factual enhancement") (internal quotation marks omitted); see also Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (noting that conclusory allegations are not entitled to an assumption of truth in determining whether a complaint states a claim upon which relief may be granted); Fullman v. Graddick, 739 F.2d 553, 556–57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").

### 3. Failure to State a Supervisory Liability Claim against Defendant CCA

The Court also finds that Plaintiff's complaint fails to state a claim against Defendant CCA to the extent he is attempting to hold it liable for the alleged misconduct of its employees or subordinates.

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D.Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged

constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Here, Plaintiff does not allege that Defendant CCA actually participated in any constitutional violation. Rather, he alleges that Defendant CCA was the "proximate cause" of his assault by other inmates based on its alleged "policies." (See doc. no. 1, p. 5.) Despite his references to "policy and procedure," however, Plaintiff also fails to sufficiently allege a "causal connection" between Defendant CCA and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).

The "causal connection" can be established "when a history of widespread abuse[4] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff has not made the necessary showing here with respect to Defendant CCA. Plaintiff alleges that Defendant CCA's "policies and procedures" allowed for purported

---

[4]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

8

understaffing of two female guards to supervise 360 inmates and "do not allow for inmate initiated protective custody." (Doc. no. 1, p. 11.) Plaintiff repeatedly uses the label "policies," but fails to offer specific facts to establish that such policies existed. See Iqbal, 556 U.S. at 678 (complaint is insufficient if it "offers labels and conclusions or a formulaic recitation of the elements of a cause of action," or if it "tenders naked assertions devoid of further factual enhancement.") (internal quotation marks omitted).

Indeed, Plaintiff bases his assertion of a policy to understaff prison supervision entirely on one instance, the day of his assault, when his dorm was allegedly only supervised by two female guards. Plaintiff offers no other allegations of incidents in which his dorm had inadequate staff, let alone other dorms at WCF or other facilities operated by Defendant CCA.

Plaintiff's allegation that Defendant CCA had a policy which "do[es] not allow for inmate initiated protective custody" is similarly deficient, as it is based entirely on Plaintiff being told on one occasion by another prison official, Unit Manager Wright, that Defendant Medlin "said he does not recognize" protective custody. (Doc. no. 1, p. 8.) From that report alone, Plaintiff extrapolates the existence of a policy by Defendant CCA of refusing to allow inmates to initiate protective custody. Because Plaintiff fails to offer any other factual allegations that suggest the existence of such a policy, the complaint falls well short of sufficiently alleging a policy by Defendant CCA.[5]

---

[5]Moreover, even if Plaintiff had sufficiently alleged that Defendant CCA had a "policy" prohibiting inmates from initiating protective custody, such a policy alone would not constitute a violation of Plaintiff's rights. "While there is an Eighth Amendment right 'to be protected from the constant threat of violence and physical assault by other inmates,' a prisoner has no constitutional right to be placed into protective custody simply because he requests such confinement." Jolly v. Van Peavy, 5:12-CV-241 MTT, 2012 WL 4829269, at *3 (M.D. Ga. Aug. 30, 2012) (quoting Zatler, 802 F.2d at 400), *adopted by* 2012 WL 4829515 (M.D. Ga. Oct. 10, 2012); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("Prisoners have no right

In sum, Plaintiff's allegations of policies by Defendant CCA are merely thinly veiled attempts to hold it liable for isolated instances of alleged misconduct by officials at WCF under a *respondeat superior* theory, which does not sound under § 1983. Hartley, 193 F.3d at 1269; Kruger, 164 F. Supp. 2d at 1333-34. Accordingly, Plaintiff fails to state a supervisory liability claim against Defendant CCA based on the events surrounding his assault.

### 4. Failure to State a Supervisory Liability Claim against Defendant Owens

The Court similarly finds that Plaintiff's complaint fails to state a claim against Defendant Owens to the extent he is attempting to hold him liable for the alleged misconduct of his subordinates.[6]

Plaintiff alleges that Defendant Owens, the Commissioner of the Georgia Department of Corrections, was "aware" through "periodic audits and oversight" of Defendant CCA's purported policies, which thus renders him responsible for the assault on Plaintiff. (Doc. no. 1, p. 12.) Because the Court has rejected Plaintiff's entirely conclusory allegations that Defendant CCA had any such policies, however, Plaintiff's claim against Defendant Owens must fail. Moreover, Plaintiff nowhere alleges any other basis for inferring a causal connection between Defendant Owens and the alleged violation of his rights, such as "a history of widespread abuse," Brown, 906 F.2d at 671, or a directive to his subordinates to act unlawfully or knowledge on his part that they would do so, Cottone, 326 F.3d at 1360. Plaintiff thus falls

---

under the Constitution to be held in either protective or minimum custody.").

[6] For the purposes of screening Plaintiff's complaint, the Court will assume *arguendo* that Defendant Owens, the Commissioner of the Georgia Department of Corrections, constitutes a "supervisor" of Defendant CCA, with whom the Department of Corrections contracts to house prisoners.

10

well short of stating a supervisory liability claim against Defendant Owens based on the events surrounding his assault. Hartley, 193 F.3d at 1269.

For the foregoing reasons, Plaintiff fails to state a claim upon which relief can be granted against Defendants CCA and Owens, and they should be dismissed from this case.[7]

## II.  CONCLUSION

The Court **REPORTS** and **RECOMMENDS** that Defendants CCA and Owens be **DISMISSED** from this case.

SO REPORTED and RECOMMENDED this 12th day of July, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

[7] In a simultaneously issued Order, the Court has allowed Plaintiff to proceed with a deliberate indifference to safety claim against Defendant Medlin.

11